# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SAM ZAID,<br><br>Plaintiff,<br><br>vs.<br><br>GETAROUND, INC., GETAROUND OPERATIONS LLC, EDUARDO INIGUEZ, JASON MUDRICK, BRUNO BOWDEN, RAVI NARULA, NIKUL PATEL, NEIL SALVAGE, and QAIS SHARIF, Defendants ABC, and Joint Tortfeasors DEF,<br><br>Defendants | CIVIL NO. 25-1119<br><br>29 L.P.R.A. §185a, 31 L.P.R.A. § 10801 and 10804, 31 L.P.R.A §9881 and 9882.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**APPEARS NOW** Plaintiff Sam Zaid, duly represented by the undersigned counsel, and respectfully states, alleges and demands judgment as follows:

**JURISDICTION AND VENUE**

1. This case is based upon diversity jurisdiction under 28 U.S.C. §1332.

2. Plaintiff is a resident of Puerto Rico.

3. All Defendants are either individuals who reside in a state other than Puerto Rico or corporations organized under the laws of the state of Delaware with its principal place of business in the state of California, or of states other than Puerto Rico.

4. The matter in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs, thus vesting jurisdiction on this Honorable Court pursuant to 28 U.S.C. § 1332

5. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391, since the events and acts or omissions giving rise to this claim occurred in this district.

6. While Plaintiff has an executed Employment Agreement dated September 30, 2020 with GETAROUND (the "Employment Agreement") and an Executive Change in Control and Severance Agreement between Plaintiff and GETAROUND dated February 21, 2024 (the "CIC Agreement"), both of which GETAROUND has materially breached, the instant complaint is being filed in this jurisdiction to toll the one (1) year statute of limitations of the causes actions under Puerto Rico law, being brought herein against GETAROUND under Act No. 80 of May 30, 1976, as amended, and against the individual Defendant Directors named below, under Article 1536 31 L.P.R.A. § 10801 and/or Article 1540, 31 L.P.R.A. § 10804, and under Article 1272 of the Puerto Rico Civil Code, 31 L.P.R.A. § 9882.

**PARTIES**

7. Plaintiff, Sam Zaid (hereinafter "Mr. Zaid" or the "Plaintiff") is of legal age and a citizen and resident of Puerto Rico.

8. Defendant GETAROUND, INC., (hereinafter "GETAROUND" or "the Company") is a Delaware corporation which, on information and belief, was qualified to do business in California at all times relevant to the allegations of this complaint and had a principal place of business in San Francisco County, California. Since December 2022, it is the holding

| | |
|---|---|
| | company of co-defendant GETAROUND OPERATIONS, LLC. |
| 9. | Defendant GETAROUND OPERATIONS, LLC, is a Delaware limited liability corporation which, on information and belief, was qualified to do business in California at all times relevant to the allegations of this complaint and had a principal place of business in San Francisco County, California |
| 10. | At all times relevant herein, both GETAROUND, INC. and GETAROUND OPERATIONS, LLC (hereinafter collectively referred to as "GETAROUND") were the employer of Mr. Zaid. |
| 11. | Plaintiff is an "employee" within the meaning of all the legal provisions of Puerto Rico law upon which he predicates his claims for relief. |
| 12. | GETAROUND is an employer under Puerto Rico Law 80. |
| 13. | Defendant EDUARDO INIGUEZ is an individual and the former Chief Executive Officer of defendant GETAROUND. At all times relevant to Plaintiff's claims herein, defendant INIGUEZ has been and is currently a member of the Board of Directors of defendant GETAROUND. |
| 14. | Defendant JASON MUDRICK is an individual and, on information and belief, is Founder and Chief Investment Officer of Mudrick Capital Management, LP. Since January 19, 2024, defendant Mudrick has been and is currently the Chairperson of the Board of Directors of defendant GETAROUND, and is the majority beneficial owner of defendant GETAROUND. |
| 15. | Defendant BRUNO BOWDEN is an individual who, since December 2022, has been and is currently a member of the Board of Directors of defendant GETAROUND. |

16. Defendant RAVI NARULA is an individual who, since December 2022, has been and is currently a member of the Board of Directors of defendant GETAROUND.

17. Defendant NIKUL PATEL is an individual who, since May 2024, has been and is currently a member of the Board of Directors of defendant GETAROUND.

18. Defendant NEIL SALVAGE is an individual who, since May 2024, has been and is currently a member of the Board of Directors of defendant GETAROUND.

19. Defendant QAIS SHARIF is an individual who, since May 2024, has been and is currently a member of the Board of Directors of defendant GETAROUND.

20. For purposes of the allegations of this Complaint, defendants INIGUEZ, MUDRICK, BOWDEN, NARULA, PATEL, SALVAGE, and SHARIF are collectively referred to as "The Director Defendants."

21. Defendants ABC Insurance Companies are unknown insurance companies which provide insurance coverage to Defendants for incidents occurring as alleged herein. They are fictitiously named herein to be later replaced by their actual names, which may become known through further discovery in this litigation.

22. Joint Tortfeasors DEF are unknown joint tortfeasors who are jointly and severally responsible for the causes of action included herein. They are fictitiously named herein to be later replaced by their actual names, which may become known through further discovery in this litigation.

## GENERAL ALLEGATIONS

23. In or around September 2009, Plaintiff co-founded GETAROUND and was employed as the Company's CEO and/or Executive Chairman from founding until February 26, 2024.

24. During Plaintiff's initial years with the Company, he resided in the state of California, and primarily rendered his services for GETAROUND at the Company's headquarters in San Francisco until March 2020 when GETAROUND instructed employees to work from home. On or around May 2020, GETAROUND moved all U.S. employees to work and render services from their home offices, so Plaintiff rendered his services for GETAROUND from his home office in San Francisco from March 2020 through December 2020. At the end of 2020, Plaintiff relocated to Puerto Rico and has since rendered services for GETAROUND from Puerto Rico.

25. In or around December 2020, Plaintiff relocated to Puerto Rico and continued to render his services for the Company remotely from his residence in Puerto Rico.

26. GETAROUND allowed and authorized Mr. Zaid to relocate to Puerto Rico, and to render his services for the Company remotely from Puerto Rico, and implemented the necessary administrative and HR changes.

27. When Plaintiff relocated to Puerto Rico, he continued in his same position as the Company's CEO and continued to as Executive Chairman/Member of the Board of Directors.

28. Mr. Zaid's compensation package and duties for the Company remained exactly the same when he relocated to Puerto Rico in or around December 2020.

29. Mr. Zaid continued to be employed by GETAROUND uninterruptedly from the moment he relocated to Puerto Rico in or around December 2020 until February 26, 2024, when he was terminated without just cause by the Company.

30. Mr. Zaid continues to reside and is domiciled in Puerto Rico.

31. During Plaintiff's tenure with the Company while residing in Puerto Rico from December 2020 to February 2024, GETAROUND would withhold and deduct from Plaintiff's

paycheck all applicable Puerto Rico state tax, unemployment and disability benefits, in compliance with local state law.

32. During the years that Plaintiff was employed by GETAROUND while domiciled and residing in Puerto Rico, Mr. Zaid filed his income tax returns and paid his taxes in Puerto Rico.

33. During his nearly 15 years of service for the Company, Plaintiff never received a negative performance evaluation from GETAROUND, nor any verbal or written admonishment for having incurred in improper or disorderly conduct, or for having repeatedly violated any reasonably adopted company rule or regulation that was known to him and provided to him in writing.

34. Notwithstanding the above, on February 26, 2024, GETAROUND terminated Plaintiffs employment as CEO without Cause.

35. From September 8, 2023 to January 19, 2024, the Company had entered into a series of transactions that culminated in the Amended and Restated Super Priority Note Agreement dated January 19, 2024, whereby Mudrick Capital Management, L.P. ("Mudrick Capital") obtained contractual rights to effectuate certain price adjustments, as well as other rights to control the vote in favor of the price adjustments, as set forth in voting agreements between Mudrick Capital and a majority of the holders of the Company's outstanding voting securities, and direct influence over Company through his board position as Chairperson, also appointed on January 19, 2024.

36. Prior to the transaction on January 19, 2024, Mudrick Capital, as a firm, and defendant Jason Mudrick, as an individual who is its key control person, had acted as largely passive investors in GETAROUND owning 23.3% of the voting power of the Company. Following the Amended and Restated Super Priority Note Agreement dated January 19, 2024, Mudrick Capital now owns more than 50% of the voting securities of the Company.

37. This transaction on January 19, 2024, also included several terms designed to provide Mudrick Capital and defendant Jason Mudrick, its key control person, with influence over

the control of the Company, including but not limited to: appointing defendant Mudrick as a director of the Company and restructuring the Company's Board of Directors to provide Mudrick with the right to recommend three out of five board seats, including the appointment of defendant Mudrick as Chairperson of the Board.

38. Subsequent to the transaction on January 19, 2024, several other events that influence control of the Company occurred, and to which defendant Mudrick led or was a key participant within, including but not limited to: (1) the termination of Plaintiff as CEO; (2) the hiring of Eduardo INIGUEZ as CEO, who's cash compensation package was significantly higher than that of the Plaintiff; (3) the appointment of Eduardo Iniguez as a director of the Company; and (4) the termination of several key executives, including the Company's CMO, COO, VP Marketing, and VP People.

39. All of these key executives named above, were also terminated without Cause.

40. These other key executives, however, have been paid severance by the Company pursuant to their duly executed severance agreements with the Company, and/or in compliance with the laws of the state or country in which each of these executives resided and were domiciled at the time of their wrongful termination.

41. Notwithstanding the above, Plaintiff has not been paid any severance or "mesada payment" under Local Law 80, as amended.

42. Moreover, Plaintiff has not been paid any severance in connection to the Executive Change in Control and Severance Agreement executed between Plaintiff and GETAROUND, dated February 21, 2024 (the "CIC Agreement").

43. The above-described events triggered a Change in Control event under the Company's definition of a "Change in Control" as set forth in the CIC Agreement (which defines "Change in Control" pursuant to the Company's 2022 Equity Incentive Plan).

44. Plaintiff's termination took place within the defined Change in Control Period, (as defined in the CIC Agreement (which defines "Change in Control Period" pursuant to the

Company's 2022 Equity Incentive Plan), thus entitling him to the benefits as set forth in the CIC Agreement.

45. Plaintiff, despite defendants' demands to the contrary, remains on the Board of Directors.

46. Despite Defendant's contractual obligations, and despite repeated demands from Plaintiff, Defendant has failed to pay any of the compensation due to him.

47. Plaintiff has repeatedly since his termination of employment without Cause made demands upon the Director Defendants to authorize the Company to pay him the severance and other benefits owed to him by the Company, but the Director Defendants have refused and continue to refuse to do so.

48. Plaintiff was not paid any "mesada" or severance payment, as stipulated by PR Law 80, or any other kind of severance payment corresponding to his 14 years and a half of employment (2009-2024).

49. As officers and directors of GETAROUND, defendants Eduardo Iniguez, Jason Mudrick, Bruno Bowden, Ravi Narula, Nikul Patel, Neil Salvage, and Qais Sharif have caused GETAROUND to violate Local Law 80 with regard to Plaintiff's rights to his "mesada" payment and have knowingly and intentionally caused GETAROUND to violate the CIC Agreement with regards to Plaintiff's right to obtain the severance payment owed to him under the CIC Agreement

50. As described heretofore, the Director Defendants were directly involved in the decisions to terminate Plaintiff's employment, and thereafter were directly involved, as Directors, in the decisions by which GETAROUND failed and refused, and continue to fail and refuse, to pay Plaintiff's severance benefits under Local Law 80 and/or under the CIC Agreement.

51. Likewise, as a fellow member of the Board of Directors and as the Chief Executive Officer of GETAROUND, defendant Iniguez played a direct role and was personally involved in the Board's decision to refuse to pay Plaintiff his severance benefits.

52. As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic damages and emotional pain and suffering.

### FIRST CAUSE OF ACTION – UNJUST DISMISSAL UNDER ACT NO. 80 OF MAY 30, 1976, AS AMENDED

53. Plaintiff re-alleges and incorporates herein by reference all paragraphs as though fully set forth herein.

54. Mr. Zaid was discharged by GETAROUND on February 26, 2024, without just cause in violation of 29 L.P.R.A. § 185(a), as amended.

55. Pursuant to 29 L.P.R.A. §185(a), as amended, Plaintiff is entitled to receive no less than $739,581.60, as a result of his 14 and a half years of service for GETARROUND from September 2009 to February 2024, plus attorney's fees.

### SECOND CAUSE OF ACTION - NEGLIGENCE

56. Plaintiff re-alleges and incorporates herein by reference all paragraphs as though fully set forth herein.

57. According to Article 1536 of the Puerto Rico Civil Code, the person who through fault or negligence causes damage to another is obliged to repair it.

58. The Director Defendants and unknown Defendants named as John Doe I-X and unknown joint tortfeasors DEF, through their acts or omissions, caused damages to Plaintiff through fault or negligence, in violation of Article 1536 31 L.P.R.A. § 10801 and/or Article 1540, 31 L.P.R.A. § 10804.

59. The Defendants owed a duty to Plaintiff not to terminate him from his employment without just cause.

60. On February 26, 2024, Director Defendants breached their duty by terminating Plaintiff without just cause.

61. As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic damages and emotional pain and suffering.

## THRID CAUSE OF ACTION – GROSS NEGLIGENCE AND FRAUD

62. Plaintiff re-alleges and incorporates herein by reference all paragraphs as though fully set forth herein.

63. In order to prove fraud under Puerto Rico law, a plaintiff must establish: (1) that a false representation was made; (2) that the plaintiff reasonably and foreseeably relied thereon; (3) that the plaintiff was injured by his reliance; and (4) that the defendant intended to defraud the plaintiff.

64. The Director Defendants were directly involved in the decisions to terminate Plaintiff's employment, and thereafter were directly involved, as Directors, in the decisions by which GETAROUND failed and refused, and continue to fail and refuse, to pay Plaintiff's severance benefits under Local Law 80 and/or under the CIC Agreement.

65. The Director Defendants acting in their personal capacities, led Plaintiff to believe that they would honor the CIC Agreement following the termination of Plaintiff's employment and knowingly, intentionally and in bad faith exchanged multiple drafts of the separation and release agreement which grossly departed from the previously contracted terms of the CIC Agreement.

66. The Director Defendants, acting in their personal capacities, engaged in bad faith negotiations regarding the wording of the separation and release agreement, while knowing

all along that the terms and conditions of the CIC Agreement would not be honored.

67. The Director Defendants, acting in their personal capacities, engaged in bad faith negotiations regarding the proposed separation and release agreement, which purposely materially and fraudulently changed the terms of the previously signed agreement, making it impossible to sign the release as drafted without waiving other substantial negotiated benefits.

68. The Director Defendants, acting in their personal capacities, willfully and unilaterally extended the time period in which the drafts of the separation and release agreement were being exchanged in order to willfully exceed the 60-day period that Plaintiff was required to sign and execute the separation and release agreement under the CIC Agreement.

69. The Director Defendants did this knowingly and intentionally to deprive Plaintiff from his severance payment to retaliate against him personally for voting against the appointment of the new CEO, Iniguez following his termination as CEO.

70. Defendant Eduardo Iniguez emailed Plaintiff a compensation breakdown that was not consistent with the agreed upon terms of the CIC Agreement.

71. Defendant Jason Mudrick attempted to force plaintiff to resign from the board as a prior condition to receive severance, contrary to the CIC Agreement.

72. Defendant Jason Mudrick, on behalf of the Board, represented to Plaintiff that he would remain on the Board in his role as director and that the CIC Agreement would be honored but that was not the case.

73. Defendant Bruno Bowden, on behalf of the Board, also represented to Plaintiff that Plaintiff would remain as board director and that the CIC Agreement would be honored but that was

not the case.

74. All of these defendants are jointly and severally liable for their intentional tortious actions and for gross negligence.

75. As a direct and proximate result of the Director Defendants' actions, Plaintiff has suffered economic damages and emotional pain and suffering.

### FOURTH CAUSE OF ACTION – PRE-CONTRACTUAL LIABLITY ("CULPA IN CONTRAHENDO")

76. Plaintiff re-alleges and incorporates herein by reference all paragraphs as though fully set forth herein.

77. According to Article 1271 of the Puerto Rico Civil Code, the dealings prior to perfection of the contract must be carried out in accordance with loyalty and good faith. 31 L.P.R.A. §9881.

78. Under Article 1272 of the Puerto Rico Civil Code, 31 L.P.R.A. § 9882 it is a breach of precontractual duties to abruptly or arbitrarily stop negotiations, to not honor prior partial agreements, among others. This code section provides for expenses incurred in furtherance of the contract and the damages suffered due to believing the contract would be perfected.

79. Defendants were obliged to behave in good faith during pre-contractual negotiations with Plaintiff. Rather, Director Defendants knowingly, willingly and intentionally, stopped these precontractual negotiations and withdrew the draft separation and release agreement, required for Plaintiff to be entitled to his severance payment.

80. The Director Defendants and unknown Defendants named as John Doe I-X and unknown joint tortfeasors DEF, through their acts or omissions, caused damages to Plaintiff, in violation of 31 L.P.R.A. § 9882.

## FIFTH CAUSE OF ACTION - INSURER'S LIABILITY

81. Plaintiff re-alleges and incorporates herein by reference all paragraphs as though fully set forth herein.

82. Pursuant to 26 L.P.R.A. § 2001, an insurance company is liable for the negligence or fault of its insured.

83. Pursuant to 26 L.P.R.A. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

84. Defendants ABC Insurance Companies are jointly and severally liable to Plaintiff for those damages directly and proximately caused by their respectively insured Defendants or for which Defendants are liable by operation of statute.

## DAMAGES

85. Plaintiff re-alleges and incorporates herein by reference all paragraphs as though fully set forth herein.

86. Plaintiff is entitled to a payment (or "mesada") in the amount of no less than $739,581.60, pursuant to Law 80, 29 L.P.R.A. §185(a), as amended, plus fair interest, and attorney's fees at 25% for a grand total of $924,477.00.

87. Plaintiff is entitled to future pecuniary losses, lost profits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

88. Plaintiff has suffered and is entitled to an award of compensatory damages for his emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life in an amount of no less than $1,000,000.00.

89. Plaintiff is entitled to reasonable attorneys' fees.

## JURY DEMAND

90. Plaintiff demands trial by jury.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, plus attorney's fees, and all other relief which the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 25th day of February 2025.

*Plaintiff's Counsel:*
**INDIANO & WILLIAMS, P.S.C.**
207 Del Parque Street, Third Floor
San Juan, P.R. 00912
Tel. (787) 641-4545; Fax (787) 641-4544
jeffrey.williams@indianowilliams.com
vanesa.vicens@indianowilliams.com
joanne.pimentel@indianowilliams.com

*s/ Jeffrey M. Williams*
**JEFFREY M. WILLIAMS**
USDC PR Bar No. 202414

*s/ Vanesa Vicéns Sánchez*
**VANESA VICÉNS SÁNCHEZ**
USDC PR Bar No. 217807

*s/ Joanne Pimentel de Jesús*
**JOANNE PIMENTEL DE JESÚS**
USDC PR Bar No. 309005